# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| V. | § | CASE NO. 4:09-CR-151 |
| | § | Judge Crone |
| DERRICK GLYNN ARMSTRONG (5) | § | |

## REPORT AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Pending before the Court is Defendant's Motion to Suppress (Dkt. #73). Having considered the relevant pleadings, and argument and testimony given at the January 6, 2010 hearing, the Court is of the opinion that Defendant's motion should be denied.

### BACKGROUND

Defendant is charged with conspiracy to posses with the intent to distribute 1,000 kilograms or more of marijuana in violation of 21 U.S.C. § 841(a)(1). Defendant seeks to suppress the discovery of $93,911.00 in U.S. currency.

The Government offered the testimony of Special Agent Tahariiq Gray ("Gray") of DEA. Agent Gray testified that his group at DEA participated in an investigation in conjunction with the Mesquite Police Department's Narcotics Section, which led to the arrest of Defendant on August 6, 2009. During the investigation Gray was informed by a cooperating defendant that Co-Defendant Patrick Cantu ("Cantu") was trafficking narcotics in the Eastern District of Texas. On August 6, 2009, Cantu was placed under arrest and search warrants were served at several locations, leading to the discovery of large amounts of marijuana and currency. Later that day, Cantu decided that he would cooperate with law enforcement and agreed to set up narcotics transactions with individuals to whom he had sold narcotics in the past. Cantu told law enforcement that he had sold narcotics

to Defendant in the past and would arrange a meeting with Defendant that evening. Gray and other officers sat in on phone calls made to Defendant by Cantu, discussing the sale of three hundred pounds of marijuana. Gray transcribed two of these phone calls, and the transcriptions were admitted into the record as exhibits during the suppression hearing. The Mesquite Police Department carried out the surveillance of Defendant that evening and Defendant was subsequently placed under arrest.

The Government also offered the testimony of Officer Jeff French ("French") of the Mesquite Police Department Narcotics Division. French testified that after his arrest, Cantu offered to arrange a marijuana transaction with Defendant. Cantu told officers that he sold Defendant narcotics on several occasions and that they normally met in the parking lot of an apartment complex. Neither Cantu nor Defendant resided in the apartment complex. Cantu called Defendant and they arranged to meet in the parking lot of the Audubon Park Apartments. Cantu said that Defendant would be driving either a silver Ford F-250 truck or a black Jeep Liberty. French and other officers set up surveillance of the apartment complex and Cantu remained in custody. Officers observed a black Jeep Liberty pull into the apartment complex parking lot and make several loops around the complex before parking at the back of the lot. French received a phone call from Officer Mark Quinn ("Quinn") of the Mesquite Police Department Narcotics Division indicating that Cantu received a phone call from Defendant stating that he was at the apartments driving a black Jeep Liberty. French and the other officers then made contact with Defendant. French approached the vehicle from the passenger side and observed a black and white bag sitting in the passenger seat. French could see money inside the bag. French stated that the money and bag were visible from outside the passenger window. As French was observing the bag containing the currency, other officers placed Defendant under arrest. French stated that Defendant was arrested based upon law enforcement's belief that

his vehicle contained evidence of narcotics trafficking.

The Government also offered the testimony of Officer Quinn. Quinn testified that he was present during the phone calls made by Cantu to Defendant to arrange a narcotics transaction. The transaction was intended to be for three hundred pounds of marijuana. Two phone calls were recorded, which arranged for Cantu to meet Defendant at the Audubon Park apartment complex, where they had conducted prior narcotics transactions. Cantu stated that when he met Defendant for past narcotics transactions, Defendant usually drove a silver Ford truck or black Jeep Liberty. A third phone call was not recorded because it was an incoming call from Defendant and officers could not get the recording equipment turned on in time and did not want to alert Defendant to their presence. According to Quinn, "the gist of the call" from Defendant was, "I'm here and I'm driving the black Jeep Liberty."

## ANALYSIS

Defendant argues that the search of his vehicle without a warrant was made without probable cause in violation his Fourth Amendment rights, making the currency obtained during the search inadmissible as a matter of law. The Government responds that probable cause existed to believe that Defendant's vehicle contained evidence of criminal activity, making the search of the vehicle for that evidence lawful.

The Fourth Amendment ensures that "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. amend. IV. The warrantless search of an area in which the Defendant has a privacy interest is per se unreasonable, unless the Government can show that an exception applies. *Katz v. United States*, 389 U.S. 347, 357 (1967). Fourth Amendment jurisprudence recognizes several warrant

exceptions. The Supreme Court held that an officer may perform a warrantless search of a home incident to arrest, so long as the search is limited to the area within the arrestee's "immediate control," which means "the area from within which he might gain possession of a weapon or destructible evidence." *Chimel v. California*, 395 U.S. 752, 763 (1969). The Supreme Court applied the holding in *Chimel* to occupants of automobiles in *New York v. Belton*, 453 U.S. 454 (1981). The Court held that an officer who arrests "the occupant of an automobile...may, as a contemporaneous incident of that arrest, search the passenger compartment of the automobile" and any containers found inside. *Id.* at 460.

In support of his motion to suppress evidence, Defendant relies upon the recent Supreme Court decision of *Arizona v. Gant*, 129 S.Ct. 1710 (2009). In *Gant*, officers arrested a driver for a suspended license, handcuffed him, and placed him in the back of a police car. Officers searched the interior of the car that the arrestee had exited, uncovering a gun and a bag of cocaine. *Id*. at 1714-16. In holding that this search violated the Fourth Amendment, the Supreme Court rejected a broad interpretation of *Belton* that would permit a search of the entire passenger compartment of a vehicle with no regard to whether the interior compartment was actually accessible to the arrestee at the time of the search. *Id*. at 1719. Instead, the warrant exception described in *Chimel* only applies to an officer "search[ing] a vehicle incident to a recent occupant's arrest...when the arrestee is unsecured and within reaching distance of the passenger compartment at the time of the search." *Id*. The Court noted that under this rule, "it will be the rare case in which an officer is unable to fully effectuate an arrest so that a real possibility of access to the arrestee's vehicle remains." *Id*. at 1719 n. 4 (citation omitted).

Defendant argues that, under *Gant*, the search incident to arrest exception did not validate

4

a warrantless search during and after he was detained by law enforcement.[1] Defendant argues that no reasonable suspicion or probable cause existed for law enforcement to approach Defendant's vehicle. Defendant argues that because the police report indicates that officers initiated contact due to how Defendant was driving his vehicle, there was no probable cause to search Defendant's vehicle. Defendant argues that currency is not a contraband item whether it was in plain view or not. While the Court agrees with Defendant that Defendant's driving alone is not likely to create probable cause allowing the warrantless search of his vehicle, the Supreme Court's decision in *United States v. Ross*, 456 U.S. 798 (1982), not *Gant*, is the controlling authority in this case.

While *Gant* limits the search incident to arrest exception, *Gant* also affirmed the viability of the probable cause exception for automobiles. *Id*. at 1719. When searching a vehicle without a warrant, "a search is not unreasonable if based on facts that would justify the issuance of a warrant, even though a warrant has not been actually obtained." *United States v. Ross*, 456 U.S. at 809. "An individual's expectation of privacy in a vehicle and its contents may not survive if probable cause is given to believe that the vehicle is transporting contraband." *Id*. at 823. "If probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search." *Id*. at 825. In *Gant*, the Supreme Court notes that "*Ross* allows searches for evidence relevant to offenses other than the offense of arrest, and the scope of the search authorized is broader." *Gant*, 129 S.Ct. at 1721. Therefore, if the law enforcement officers had probable cause, then Defendant's motion to suppress should be denied.

Probable cause is defined as "whether at that moment the arrest was made, the officers

---

[1] Defendant asks the Court to adopt the "four-corners test" for examining affidavits that are used to obtain search warrants and apply it to the DEA's report in this case. However, Defendant cites no authority for this proposition and the Court declines Defendant's request.

had...facts and circumstances within their knowledge and of which they had reasonably trustworthy information that was sufficient to warrant a prudent man in believing that [Defendant] had committed or was committing an offense." *Charles v. Smith*, 894 F.2d 718, 723 (5th Cir. 1990) (quoting *Beck v. State of Ohio*, 379 U.S. 89, 91 (1964)). "The existence of probable cause is determined by reviewing the totality of the circumstances." *United States v. Antone*, 753 F.2d 1301, 1304 (5th Cir. 1985) (citing *Illinois v. Gates*, 462 U.S. 213, 238 (1983)).

The Court finds that the law enforcement officers had probable cause to detain Defendant and search Defendant's vehicle. The facts here are similar to the facts in *Ross*, and the Court finds that the same reasoning allowing a legal search in that case allows the search of Defendant's vehicle. In *Ross*, the Supreme Court held that officers had probable cause to search the trunk of arrestee's vehicle without a warrant after they arrested him for dealing narcotics, because a reliable informant gave a detailed description of arrestee's narcotics sales and a detailed description of arrestee's vehicle which was used during the narcotics sales. *See Ross*, 456 U.S. at 800.

Here, the officers who participated in the stop and search of Defendant's vehicle had probable cause to believe that large amounts of currency that would be used to purchase three hundred pounds of marijuana were located in Defendant's vehicle. Law enforcement listened to several phone calls between Defendant and Cantu, which law enforcement believed arranged for Defendant to purchase three hundred pounds of marijuana from Cantu. Defendant carried out the transaction just as Cantu said previous transactions occurred. Defendant arrived for the transaction in the black Jeep Liberty, just as Cantu had said would happen. Then Defendant called Cantu and confirmed over the phone that he was present at the apartment complex and awaiting Cantu's arrival with the narcotics. A review of the totality of the evidence indicates that the arresting officers

possessed "reasonably trustworthy information that was sufficient to warrant a prudent man in believing that [Defendant] had committed or was committing an offense" involving a narcotics transaction. *Charles v. Smith*, 894 F.2d at 723 (citations omitted). Therefore, the Court finds that because officers had probable cause to search Defendant's vehicle for contraband, Defendant's motion to suppress evidence should be denied.

## RECOMMENDATION

The Court recommends that Defendant's Motion to Suppress should be DENIED.

Upon agreement of the parties, within five (5) days after service of the magistrate judge's report, any party may serve and file written objections to the findings and recommendations of the magistrate judge. 28 U.S.C. § 636(b)(1)(c).

Failure to file written objections to the proposed findings and recommendations contained in this report within five days after service shall bar an aggrieved party from *de novo* review by the district court of the proposed findings and recommendations and from appellate review of factual findings accepted or adopted by the district court except on grounds of plain error or manifest injustice. *Thomas v. Arn*, 474 U.S. 140, 148 (1985); *Rodriguez v. Bowen*, 857 F.2d 275, 276-77 (5th Cir. 1988).

**SIGNED this 11th day of January, 2010.**

_____
AMOS L. MAZZANT
UNITED STATES MAGISTRATE JUDGE